UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>RAFAEL VALADEZ, JR.,<br><br>      Defendant. | Case No. 21-CR-00695-JEB |

**RAFAEL VALADEZ, JR.'S SENTENCING MEMORANDUM**

**I.  INTRODUCTION**

"My actions came with many consequences that affected my family and me in many ways. I am the only one working in my family. My wife stays at home and cares for our two toddlers, and home schools our middle schooler. We have another child in high school. My wife and children are now stressed due to the fact that they don't know what is going to happen to them financially if I go to prison. My son Isaac is concerned about his friends finding out about my case and how they will react. Some of my family and friends stopped talking to me because of what I did. It was never my intention to ever hurt my family, and seeing them bare pain caused by my actions and having to see the hurt in their faces due to the mess I am in is draining day after day, and is a sentence in itself.

*Ex*. D, Letter from Rafael Valadez, Jr.

      Mr. Rafael Valadez, Jr. deeply regrets the choices he made on January 6, 2021. Since then, he has tried to make amends by focusing on God, his family, and work. He has also

1

complied with all of the conditions of his release. (Dkt. 22). He requests that the Court sentence him to two-years of probation with a condition of 30-days home detention.

## II.  DISCUSION

**18 U.S.C. § 3553(a) Is The Standard of Review**

"[S]entencing is an art, not to be performed as a mechanical process but as a sensitive response to a particular person who has a particular personal history and has committed a particular crime." *U.S. v. Harris*, 679 F.3d 1179, 1183 (9th Cir. 2012).

The Supreme Court has consistently held that federal judges should impose sentences that are not greater than necessary to satisfy the statutory purposes of sentencing, consider all of the characteristics of the offender and circumstances of the offense, reject advisory guidelines that are not based on national sentencing data and empirical research, and serve their function in the constructive evolution of responsible guidelines. *See U.S. v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005); *Rita v. U.S.*, 51 U.S. 338, 127 S. Ct. 2456, 168 L.Ed.2d 203 (2007); *Gall v. U.S.*, 52 U.S. 38, 128 S. Ct. 586, 169 L.Ed.2d 445 (2007); *Kimbrough v. U.S.*, 552 U.S. 85, 128 S. Ct. 558, 169 L.Ed.2d 481 (2007); *Spears v. U.S.*, 555 U.S. 261, 129 S. Ct. 840, 172 L.Ed.2d 596 (2009); *Nelson v. U.S.*, 555 U.S. 350, 129 S. Ct. 890, 172 L.Ed.2d 719 (2009).

The applicable sentencing statutes provide that a sentencing court "shall impose a sentence sufficient, but not greater than necessary" to achieve the objectives of sentencing. *See* 18 U.S.C. §§ 3553(a), 3582(a), and 3661. In arriving at the appropriate sentence, § 3553(a) directs sentencing courts to consider: (1) the nature and circumstances of the offense; (2) the history and characteristics of the offender; (3) the need to impose a punishment that reflects the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; (4) to afford adequate deterrence; (5) to protect the public from further crimes; (6) to provide the defendant with needed education, vocational training, medical care or other correctional treatment; and (7) the kinds of sentences that are available. 18 U.S.C. § 3553(a)(1), (2). When these factors are fully considered, including Mr. Valadez's family responsibilities,

long-standing respect for the law, genuine remorse, and complete compliance with the conditions of his pretrial release, a sentence of two-years of probation with a condition of 30-days home detention, is sufficient but not greater than necessary.

### A. Presentence Report

Mr. Valadez does not have any objections to the information contained in the Presentence Report. Mr. Valadez notes that he did provide the United States Probation Office ("USPO") with signed releases for his education, employment, medical, psychological, and financial records on August 11, 2022. He also provided the USPO with other financial records such as a payroll, bank account, and mortgage on August 11, 2022.

### B. Mr. Valadez's History and Characteristics

Mr. Valadez was born in 1979, to Martha Gradilla Valadez and Rafael M. Valadez. PSR ¶ 36. Mr. Valadez's father worked as a handyman. *Id*. Mr. Valadez's mother worked as a housekeeper. *Id*. Mr. Valadez's parents divorced when he was 10 years old; his parents co-parented after the divorce. *Id*. ¶ 37.

Mr. Valadez had a good yet humble childhood. *See* PSR ¶¶ 37-39. Although he grew up in a neighborhood with criminal activity, Mr. Valadez stayed away from it. *See id*. He instead played soccer and football. *Id*. ¶ 39. He worked part-time at Burger King. *Id*. ¶ 57. In high school, he completed a Certified Nursing Assistant program. *Id*. ¶ 53. Upon graduation, Mr. Valadez worked as a Certified Nurse Assistant. *Id*. ¶ 58.

Five years after graduation from high school, Mr. Valadez married his wife, Jenny Valadez. PSR ¶ 40. Together, they have four children ranging in age from 17 to one-year-old. *Id*.; *see also Ex*. A, Family Photos. Mrs. Valadez is a homemaker. PSR ¶ 40. She cares for her and Mr. Valadez's three-year-old and one-year-old children. *Id*. She also homeschools their 13-year-old daughter. *Id*. They also have a 17-year-old son in high school. *Id*.

Approximately 16 years ago, Mr. Valadez became self-employed as a handyman. PSR ¶ 55. He is the sole-provider for his wife and four children. *Id*. ¶ 65.

If the Court incarcerates Mr. Valadez, Mr. Valadez's family will suffer. Mr. Valadez is the sole-provider for his family. PSR ¶ 65. He is a self-employed handyman. *Id*. ¶ 55. His wife is a homemaker who cares for their two toddlers while home-schooling their 13-year-old child. *Id*. ¶ 40. In addition, the Valadezs have another child in high school. *Id.* Thus, Mrs. Valadez cannot go back to work. *Ex*. B, Letter from Jenny Valadez. Even if she did go back to work, she could not earn enough to support herself and her four minor children. *Id*. The Valadezs live in Riverside County, California, "which saw a 9.4% annual inflation rate in May, one of the highest in the nation. The average inflation rate across all US urban areas, as measured by the Labor Department's Consumer Price Index, was 8.6% for May." *Ex*. C, Natasha Chen, *This region is suffering from some of the highest inflation in America. Here's how locals are surviving*", CNN, July 28, 2022, at 2. California has the highest average gas price in the nation, and "the stunning increase in the price of food and fuel in (Riverside and San Bernardino counties) has caused residents . . . to find new ways to make ends meet" such as relying on food pantries.[1] *Id*. Thus, were Mr. Valadez to serve a custodial sentence, his family would suffer unique financial harm due to these circumstances.

    C.    **Nature and Seriousness of the Offense**

When looking at the spectrum of criminal conduct, Mr. Valadez's conduct is not among the most serious. Mr. Valadez did not go to the Capitol with the intent to commit acts of violence. *Ex*. D, Letter from Rafael Valadez, Jr. His conduct was an isolated incident, he participated in a political protest that occurred over 26 minutes. His criminality did not occur over days, months, or years. Moreover, it was Mr. Valadez's first and last protest. *Id*. The government does not dispute this. At the protest, Mr. Valadez did not commit any acts of violence, nor did he incite others to commit acts of violence. The exhibits to the government's sentencing memorandum show Mr. Valadez walking around the Capitol filming the event, and

---

[1] According to the American Automobile Association, the average price of gas in Riverside County on Sept. 27. 2022, is $5.80.  *See* American Automobile Association, Sept. 27, 2022, https://gasprices.aaa.com/?state=CA.

nowhere on the audio do you hear Mr. Valadez encouraging acts of violence. As the government's exhibits also show, Mr. Valadez did not intentionally deface or damage government property. Thus, while Mr. Valadez's conduct was harmful, as he readily admits in his letter to the Court, his conduct was not among the most serious.

      D.      **Respect for the Law**

Mr. Valadez has shown respect for the law over the last twenty years. PSR ¶¶ 27-34. He has not been arrested or sustained any convictions. *Id*. Thus, he is not someone who has a history of aggressive or non-compliant behavior with law enforcement or the courts. He does not have affiliations with extremist political groups. *See generally* PSR. Importantly, he has fully complied with the conditions of his release since his arrest nearly a year ago. (Dkt. 22).

Mr. Valadez's conduct in this case is aberrant behavior. While USSG §5K2.20 does not apply to misdemeanors, USSG §5K2.20 provides useful guidance here as the Guidelines recognize that a reduction in sentence is warranted where a defendant commits a single criminal occurrence, such as here, and (1) committed the crime without significant planning, (2) the crime was of limited duration, and (3) the conduct represents a marked deviation by the defendant from an otherwise law-abiding life, which is also true here. Mr. Valadez illegally entered the Capitol, and remained in the Capitol for 26 minutes as part of a protest. PSR ¶¶ 15-16. Thus, he committed a single criminal offense that was of limited duration. Mr. Valadez was not one of the rallies' organizer. He was a participant, who has never been to Washington, D.C. or a protest, and followed other protestors into the Capitol. Thus, he committed this crime without significant planning. Finally, Mr. Valadez's conduct represents a marked deviation from an otherwise law-abiding life as Mr. Valadez has not been arrested or sustained any convictions in over 20 years. PSR ¶¶ 27-34. Thus, Mr. Valadez does not need a custodial sentence to impress the importance of respect for the law.

      E.      **Just Punishment**

In assessing just punishment, a custodial sentence is not warranted. Mr. Valadez does not have a pattern for similar conduct, as stated in his letter, this was the first protest he has ever

attended. *Ex*. D, Letter from Rafael Valadez, Jr. In comparison to other participants, Mr. Valadez played a minor role. Mr. Valadez followed the protestors who had already illegally entered the Capitol. PSR ¶ 15. Mr. Valadez then followed the crowd through building, taking video with his phone. *Id*. As Mr. Valadez and his wife wrote to the Court, Mr. Valadez went to the protest with intent of supporting former President Trump, he did not go with the intent to participate in an insurrection. Moreover, Mr. Valadez has insight into his misconduct, as he writes to the Court:

> "It was never my intention to ever hurt my family, and seeing them bare pain caused by my actions and having to see the hurt in their faces due to the mess I am in is draining day after day, and is a sentence in itself.
>
> The crime I committed is harmful in many ways for it can be the stepping stone to more situations where protests become violent. When I left for the protest, I thought I was going to a march to support President Trump.  I was upset about the election results.  I did not go to the protest thinking it was going to be violent.  I've never been to Washington, D.C.  I've never been to a protest.  When I was at the protest, I didn't think through what was going on.  I wanted to keep filming what was going on.  I didn't stop to think about the harm I was causing to the Capitol and the people who work there.  I know these are not excuses.  I am embarrassed by what I did that day.  Since Jan. 6th, I have focused on God, my family, and work which has kept me on the right path.  I have not attended any type of rally, protest, meeting, etc. and do not want to.  I just want to work and take care of my family."

*Ex*. D, Letter from Rafael Valadez, Jr.

A sentence of probation is significant punishment. *Gall v. U.S.*, 552 U.S. at 47. For example, probationers are "subject to several standard conditions that substantially restrict their

liberty." *Id*. citing *U.S. v. Knights*, 534 U.S. 112, 119, 122 S. Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S. Ct. 3164, 97 L.Ed.2d 709 (1987))). In addition, "[p]robationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court." *Id.* at 48. Probationers "must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking." *Id*. Many probationers have special conditions, as well. *Id*. Thus a sentence of probation in this case is significant punishment for Mr. Valadez.

Finally, Mr. Valadez appears to be genuinely motivated to change. He has fully complied with his release conditions. (Dkt. 22). He has not attended any rallies or protests since Jan. 6, 2021. *Ex*. D, Letter from Rafael Valadez, Jr. He has instead focused on God, his family, and work. *Id*. With this renewed focus, Mr. Valadez has stayed on the "right path", as he writes in his letter to the Court. *Id*.

      **F.**    **A Sentence of Incarceration is not needed to Deter Mr. Valadez from Reoffending**

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28-29 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." *Id.*; *see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity.").

Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. *See* Andrew von Hirsch et al., *Criminal Deterrence and Sentence*

7

*Severity: An Analysis of Recent Research*, Hart Publishing, Oxford (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE. PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. *Id*. at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id*. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." *Id*. at 2 The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id*. at 1.

The reason for this is that potential criminals are not generally aware of penalties for their prospective crimes, do not believe they will be apprehended and convicted, and do not consider sentence consequences in the manner one might expect of rational decision makers. *See* Tonry, *Purposes and Functions of Sentencing* at 28-29.

Given that Mr. Valadez is 43-years-old and has no criminal convictions, not even a traffic infraction, it is unlikely he will recidivate. *See* United States Sentencing Commission, *Recidivism and the "First Offender"*, May 2004 at 13 ("offenders with zero criminal history points have a primary recidivism rate of 11.7 percent."). Moreover, Mr. Valadeze has been in full compliance with the conditions of his release since his arrest, nearly a year ago. (Dkt. 22). He also has family support. *Exs*. B and D, Letters from Family. As he stated in his letter to the Court, since his arrest, Mr. Valadez has focused on God, his family, and work. *Ex*. D, Letter from Rafael Valadez, Jr. This focus has kept him on the right path. *Id*. Thus, a custodial sentence is not needed to deter Mr. Valadez from committing further crimes.

## III. CONCLUSION

For the reasons stated above, Mr. Valadez respectfully requests that the Court sentence him to two-years of probation with a condition of 30-days home detention.

                              Respectfully submitted,

                              CUAUHTEMOC ORTEGA
                              Federal Public Defender

DATED: Sept. 28, 2022        By  */s/ Angela C. C. Viramontes*
                              ANGELA C. C. VIRAMONTES
                              Deputy Federal Public Defender
                              Cal Bar No. 228228
                              3801 University Avenue, Suite 700
                              Riverside, California 92501
                              (951) 276-6346
                              angela_viramontes@fd.org

## CERTIFICATE OF SERVICE

On September 28, 2022, a copy of the foregoing was served upon all parties *listed* on the Electronic Case Filing (ECF) System.

By  */s/ Angela C. C. Viramontes*
ANGELA C. C. VIRAMONTES
Deputy Federal Public Defender
Cal Bar No. 228228
3801 University Avenue, Suite 700
Riverside, California  92501
(951) 276-6346
angela_viramontes@fd.org

On September 28, 2022, a copy of the foregoing was served upon the part *not* listed on the Electronic Case Filing (ECF) System by placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows:

SHERRY B. BAKER
Senior US Probation Officer
333 Constitution Avenue, Suite 2214
Washington, DC 20001-1300

By  */s/ Angela C. C. Viramontes*
ANGELA C. C. VIRAMONTES
Deputy Federal Public Defender
Cal Bar No. 228228
3801 University Avenue, Suite 700
Riverside, California  92501
(951) 276-6346
angela_viramontes@fd.org